# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANNE URSULA SCHULZE AVITIA,<br><br>           Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No. 1:14-cv-01733-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 13, 14, 15) |

## I.

## INTRODUCTION

Plaintiff Susanne Ursula Schulze Avitia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from right knee degenerative joint disease, left knee degenerative joint disease with meniscus tear, obesity, lumbago, hypertension, depression, anxiety and panic attacks. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 24, 2011. (AR 67.) Plaintiff's application was initially denied on October 3, 2011, and denied upon reconsideration on January 25, 2012. (AR 92-95, 98-102.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on February 28, 2013. (AR 26-66.) On April 12, 2013, the ALJ found that Plaintiff was not disabled. (AR 10-21.) The Appeals Council denied Plaintiff's request for review on September 9, 2014. (AR 1-3.)

### A.   Hearing Testimony

Plaintiff testified at the February 28, 2013 and was represented by counsel. (AR 30-53, 57-58.) Plaintiff was born on February 17, 1955. (AR 31.) She is 5' 3 3/4" tall and weighs 223 pounds. (AR 31.) Plaintiff attended school in Germany completing what would be equivalent to high school in the United States and some college. (AR 32.) Plaintiff went to trade school for four years and is a licensed optician. (AR 32.)

Plaintiff is living in a mobile home with her husband and her daughter. (AR 31.) Plaintiff has a driver's license and drives when she absolutely has to. (AR 32.) Due to her medications, she usually will have someone else drive. (AR 32.) Plaintiff is able to manage all her own personal care. (AR 34.) She cannot use the bathtub, but is able to shower and has an extender for the toilet. (AR 51.) Plaintiff does some cooking, loads the dishwasher and puts dishes away. She has five acres and can ride the riding lawn mower. (AR 34.) Plaintiff can grocery shop with a small cart. (AR 34.) Plaintiff does not participate in any social activities and is pretty much at home 24/7. (AR 34.)

Plaintiff rescues animals. (AR 34.) Animal rescue is a network and if she gets a wild animal she will pass it on. (AR 35.) She rescues mainly dogs and cats. (AR 35.) Plaintiff spends 22 hours a day in bed. (AR 35.) She does whatever paperwork she has to do sitting up. (AR 35.) Plaintiff cannot sit on the couch because it is too low and she cannot get up off of it. (AR 35.) There is only one chair she can sit on in her living room so she just moved into the

bedroom.  (AR 35.)

While she is in bed, Plaintiff watches television and tries to sleep.  (AR 35.)  Plaintiff falls asleep when she tries to watch television.  (AR 47.)  She only sleeps an hour and a half to two hours at a time.  (AR 35.)  Plaintiff has bad dreams and anxiety attacks.  (AR 35.)  A few weeks prior to the hearing, Plaintiff lost a whole day.  (AR 48.)  She went to sleep and slept until 8:30 that night.  (AR 48.)  When she woke up she called a friend in Germany and talked to her for two hours and fifteen minutes.  (AR 48.)

Plaintiff's husband has a truck business.  (AR 32.)  He has a dispatcher who gives him jobs.  (AR 36.)  Plaintiff handles the paperwork for the business.  (AR 36.)  Plaintiff used to help her husband change tires and wash the truck, but is not able to help him in those tasks anymore.  (AR 36.)  She sends in payroll, keeps track of who they are working for and whether they are paid for the jobs.  (AR 36-37.)  Plaintiff sends in the quarterly heavy highway taxes, keeps tracks of bills that are being paid, and renews insurance.  (AR 37.)  Plaintiff does not prepare the taxes or payroll, but keeps track of the information and forwards it for processing.  (AR 57.)

On August 29, 2011, Plaintiff went to the store and was carrying groceries when she heard a sound and it felt like something shot her in the knee.  (AR 38.)  A few days later, Plaintiff had an MRI and was told that she had split the meniscus, had a cyst, and the cartilage was frayed.  (AR 38.)  Plaintiff saw an orthopedic surgeon who told her that she could have arthroscopic surgery, but would need a total knee replacement in a year or so.  (AR 39.)  Three weeks prior to the hearing, Plaintiff was going across a parking lot and her other knee "went" but in a different place.  (AR 39.)  Her right knee is now in constant pain.  (AR 39.)  Plaintiff has water in both knees and does not have full range of motion.  (AR 39.)  Plaintiff has pain in both knees that is constant and is worse when it gets cold.  (AR 39-40.)  The pain is better when she takes her medication.  (AR 40.)  The pain is worse when she elevates her knees.  (AR 40.)  Due to the pain in her knees she can only lay on her side.  (AR 40.)  Plaintiff went to rheumatologist to see if he could help with her knee pain, but he just offered Novocain to which she is allergic.  (AR 41.)

Plaintiff has episodes where her heart races.  (AR 42.)  These episodes occur several

times a week when she is not taking her medication. (AR 42.) The episodes are manageable when she is on her medication. (AR 42-43.)

Plaintiff also has back pain. (AR 43.) Initially they thought it was sciatica, but the pain no longer goes down the back of her leg. (AR 43.) Plaintiff thinks it is nerve pain because it feels like ice that radiates over the whole side. (AR 43.) The pain is there if Plaintiff is up more than ten minutes. (AR 43.) Plaintiff takes Norco and Soma for pain. (AR 40, 43.) They help the pain, but make her sleepy. (AR 43-44.)

Plaintiff is able to lift 60 pounds but would be unable to move it forward. (AR 44.) Plaintiff has a hard time carrying her dog into the house who weighs six pounds. (AR 44.) She is unable to carry him through the house into the backyard. (AR 53.) Plaintiff is unable to carry wet laundry or bring groceries into the house. (AR 44.) Plaintiff can carry the laundry if she breaks it into several small portions. (AR 53.) Plaintiff is able to sit for forty-five minutes before she has to stand up due to back pain. (AR 45, 50.) After being up, she needs to lay down for about an hour. (AR 50.) Plaintiff can stand for ten minutes before she has to sit down due to back pain. (AR 45, 50.) Plaintiff can walk from the handicapped parking space into the building. (AR 45.) Plaintiff wears sandals without socks so does not have to put on shoes or socks. (AR 45.) She is able to bend over and squat down to pick something up off the floor. (AR 45-46.) Plaintiff climbs three steps to get into her mobile home. (AR 46.)

Plaintiff takes Xanax for her anxiety. (AR 46.) She had some counseling through the American Cancer Society. (AR 46.) If Plaintiff is not on her medication then she looks at her Vicodin and considers suicide. (AR 46.) Plaintiff's anxiety comes and goes and it does not help that she has the Internal Revenue Service breathing down her neck. (AR 47.) Plaintiff has no problem being in crowds. (AR 47.) She does get claustrophobic when she is a room without windows. (AR 47.)

Plaintiff has nerve damage to two fingers of her right hand. (AR 48.) Plaintiff had cancer surgery on June 7, 2012. (AR 49.)

Plaintiff would not be able to be to a job at 8:00 every morning because she could not take her medication if she had to travel. (AR 52.) Plaintiff does not know if she could be to a

4

job every day because some days are worse than others. (AR 52.) For the last four to five months, Plaintiff has had problems with nausea and she also has irritable bowel syndrome. (AR 52.)

A vocational expert ("VE") Jose Chaparro also testified at the hearing. (AR 55-64.) The VE classified Plaintiff's past relevant work as a general clerk, DOT 209.562-010, light and semi-skilled, SVP 3. (AR 56.)

The ALJ presented a hypothetical of an individual of Plaintiff's age, education, and work background who could lift and carry 20 pounds occasionally, and 10 pounds frequently; can sit six hours and stand or walk two hours; can occasionally stoop, crouch, crawl, climb or kneel; but with no climbing of ladders, ropes, scaffolds or working on uneven surfaces; and frequent right lower extremity push pulling and occasional left lower extremity push pulling. (AR 58-59.) The VE opined that this individual could not perform any past work due to the amount of time Plaintiff was on her feet. (AR 59.) The VE opined that there are other clerical skills that can transfer to other semi-skilled, sedentary jobs. (AR 59.) Due to the sitting requirement, the VE identified one sedentary job: typist, DOT 203.582-066, with 2,500 jobs in the national economy and 500 jobs in California. (AR 60.)

The ALJ presented a second hypothetical with an individual with the same limitations, except she could only lift ten pounds occasionally and could not kneel. (AR 60-61.) The VE opined this individual could perform the same job identified in the prior hypothetical. (AR 61.)

Plaintiff's counsel then inquired whether the VE knew if Plaintiff was able to type or how many words per minute that she could type. (AR 61.) The VE opined that he did not know the answer to those questions and he was offering his opinion based upon her description in the documents that she submitted. (AR 61.) The VE stated that if she was unable to type that could provide a different answer. (AR 62.)

Plaintiff's counsel then inquired regarding other clerical positions that Plaintiff could perform and the transferability of skills from Plaintiff's previous employment. (AR 62.) The VE opined that there would be a minimal amount of adjustment required to transfer Plaintiff's skills, but there are not a lot of job titles out there. (AR 62-63.)

1    Plaintiff's counsel offered a hypothetical of an individual of Plaintiff's age, education,
2 background, and work experience who could sit for no more than forty-five minutes at one time
3 after which she would be required to lay down for one hour; could stand for no more than ten
4 minutes after which she would be required to lay down for one hour; and is unable to maintain a
5 regular schedule. (AR 63.) The VE opined there would be no jobs in the economy for this
6 individual. (AR 63.)

7    The VE opined that there were additional jobs that an individual in the first hypothetical
8 could perform. (AR 64.) If this individual is able to type, she could work as a data examination
9 clerk, DOT 209.387-022, 75,700 jobs in the national economy and 8, 500 jobs in California; and
10 credit card control clerk, DOT 249.367-026, 9,900 jobs in the national economy and 1,100 in
11 California. (AR 64.) These jobs require use of "in typing and so on, but more than anything, it's
12 compiling, verifying, checking, and so on." (AR 64.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2011;
- Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of August 19, 2010, through her date last insured of June 30, 2011;
- Through the date last insured, Plaintiff had the following severe impairments: right knee degenerative joint disease, left knee degenerative joint disease with meniscus tear, obesity, and lumbago;
- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments;
- Through the date last insured, Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour day; stand and walk for 2 hours in an 8-hour day; occasionally stoop, crouch, crawl, climb, and kneel; frequently push and pull with the right lower extremity;

occasionally push and pull with the left lower extremity; and cannot climb ladders, ropes, or scaffolds, or walk on uneven ground;

- Through the date last insured, Plaintiff was unable to perform any past relevant work;
- Plaintiff was born on February 17, 1955, and was 56 years old, which is defined as an individual closely approaching advanced age, on the date last insured;
- Plaintiff has at least a high school education and is able to communicate in English;
- Plaintiff has acquired work skills from past relevant work;
- Considering the claimant's age, education, work experience, and residual functional capacity, Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy; and
- Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 19, 2010, the alleged onset date, through June 30, 2011, the date last insured.

(AR 15-21.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred at step five of the sequential evaluation because she did not make any findings regarding transferable skills, did not address whether Plaintiff has the ability to type, and failed to consider the opinion of the physician who conducted the consultative examination. Defendant responds that the skills Plaintiff acquired from working as a general clerk were transferable to other similar types of skilled clerical work and the failure to address the specific skills is a technical error that was harmless. Further, Defendant argues that the ALJ did not err in giving little weight to the opinion of Dr. Nikkel because she found that Plaintiff's mental impair was not severe.

## A.   Transferability of Job Skills

While the burden is on the claimant to prove that they are disabled at steps one through four, at step five the burden shifts to the Commissioner to show that there are a significant number of jobs in the national community that the claimant can perform. Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). The Social Security regulations provide that "[w]hen the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision." Titles II & XVII: Work Skills & Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective Feb. 26, 1979, SSR 82-41, 1982 WL 31389, at ¶ 7 (S.S.A. 1982). "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." Id. The Ninth Circuit has held that where transferability of job skills is at issue in the action, the ALJ must make specific findings on transferrable skills even when relying on the testimony of the VE. Bray, 554 F.3d at 1225.

Transferability of skills is at issue when an individual's impairment, though severe, does not meet or equal the listing, but prevents the performance of past relevant work that has been determined to be skilled or semiskilled. SSR 82-41, 1982 WL 31389, at ¶ 1. The regulations provide that "a semiskilled general office clerk (administrative clerk), doing light work,

9

1 ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk." Id. at ¶ 4.

On the date of decision, Plaintiff was 56 years old and the ALJ found that she was closely approaching advanced age on the date last insured. (AR 20.) However, since Plaintiff was 56 years old on the date last insured she was considered of advanced age. 20 C.F.R. § 404.1563.

> To find that an individual who is age 55 or over and is limited to sedentary work exertion has skills transferable to sedentary occupations, there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are age 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their [past relevant work]. In order to establish transferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

SSR 82-41, 1982 WL 31389, at ¶ 4(c). The Ninth Circuit has held that an individual of advanced age must have skills that are directly transferable to overcome a presumption of disability. Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986). This requires the ALJ to make a finding of " 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration appellant's age." Renner, 786 F.2d at 1424.

The regulations provide that due to Plaintiff's age, the job duties of her past work must be so closely related to other jobs that she can perform that she could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation. SSR 82-41, 1982 WL 31389, at ¶ 4(c). A claimant in Plaintiff's position who does not have transferable skills is deemed disabled according to the Medical Vocational Guidelines ("the grids"). 20 C.F.R. Part 404, Subpart P, Appendix 2 at § 201.06. Therefore, this is a dispositive issue. The Ninth Circuit has made it clear that a district court may not review a transferable skills finding based on what it assumes the ALJ determined; instead, the court must review the facts and reasons supporting the ALJ's decision. Bray, 554 F.3d at 1225.

1    In addressing transferability of skills, the ALJ stated, "The vocational expert testified that
2 the claimant's past relevant work as a general clerk was semi-skilled with a specific vocational
3 preparation (SVP) code of 3." (AR 20.) At the hearing, the VE testified that any vocational
4 adjustment in the terms of tools, work process, work settings, or industries would be minimal and
5 the ALJ recognized this in his decision. (AR 19, 62.) While Defendant argues that the VE
6 testified as to the transferability of skills, the Ninth Circuit has made it clear that it is for the ALJ,
7 not the VE, to make specific findings on transferrable skills. Bray, 554 F.3d at 1225.
8 Accordingly, the ALJ erred by failing to make specific findings regarding the transferability of
9 skills.

10   Defendant argues that the error was harmless because there is sufficient evidence in the
11 record to find that Plaintiff had transferable skills. However, while there may be situations in
12 which the evidence in the record is sufficient to find any such error harmless, the Court finds this
13 not to be the case here.

14   In her psychological evaluation, Plaintiff reported that she watches television, reads, and
15 works on the computer. (AR 291.) Plaintiff's work history report states that she does
16 paperwork, billing and cleaning. (AR 177.) She writes, types or handles small objects two hours
17 per day. (AR 177, 186.) During the hearing, Plaintiff testified that her husband is the only
18 employee of the business, and she helped wash the truck and change tires, did paperwork, and
19 sent the payroll in. (AR 36, 58.) Plaintiff is not a bookkeeper, but does basic bookkeeping, such
20 as keeping track of who they are working for and whether they get paid for jobs. (AR 37, 57.)
21 She puts the name of the company, identification number and the amount they are to be paid in a
22 book every week. (AR 57.) She sends in the tax information quarterly to the CPA who prepares
23 their taxes. (AR 37, 57.) She keeps track that the bills are being paid, pays the taxes, and renews
24 the insurance. (AR 37.) Contrary to Defendant's assertion, the Court does not find the similarity
25 of Plaintiff's prior work to be readily apparent.

26   Finally, the Court finds no merit to Defendant's argument that counsel did not pursue the
27 matter of his client's typing ability during the hearing. Counsel raised Plaintiff's typing ability
28 with the VE. It was clear that Plaintiff's position during the hearing was that she did not possess

transferable skills for the identified jobs and the ALJ could have further developed the record to address the skills that Plaintiff had acquired while self-employed. Cf. Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) (If conflicts with the DOT are so apparent then counsel should point them out during the hearing and the failure to do so is tantamount to inviting error.)

Accordingly, the Court finds substantial evidence does not support the ALJ's finding that Plaintiff possesses transferable skills and this action shall be remanded for the ALJ to further develop the record.

### B.     The Weight Given to the Opinion of Dr. Nikkel

Plaintiff argues that the ALJ also erred by failing to consider the opinion of Dr. Nikkel who was the only examining physician. Defendant contends that the ALJ properly considered the entire record in determining that Plaintiff's mental impairments were not severe and the failure to cite specific evidence does not mean that the evidence was not considered.

On August 19, 2011, Dr. Nikkel conducted a comprehensive psychiatric examination of Plaintiff. (AR 289-294.) Although Plaintiff had been prescribed antidepressants on occasion in the past, she did not like the side effects and was not taking any psychiatric medication. (AR 389-90.) Dr. Nikkel found Plaintiff to be fairly groomed and casually dressed with fair hygiene and appropriate eye contact. (AR 292.) Plaintiff was irritable, yet cooperative. (AR 292.) Her thought processes were logical and goal oriented; speech was normal in rate and pace with relevant content; and articulation was clear. (AR 292.) Plaintiff denied suicidal or homicidal ideation, but her thought content included themes of worthlessness and hopelessness. (AR 292.) Plaintiff stated that her mood was okay, but Dr. Nikkel found her to appear irritable. (AR 292.)

Plaintiff was oriented in all spheres and intellectual functioning and sensorium testing was normal. (AR 292-93.) Dr. Nikkel diagnosed Plaintiff with an adjustment disorder with depressed and anxious mood and a GAF of 55. (AR 293.) Dr. Nikkel opined that Plaintiff has the ability to perform simple and repetitive as well as detailed and complex tasks, is able to perform work activities on a consistent basis without special or additional instruction, and is able to deal with the usual stress encountered in a competitive workplace. (AR 294.) Plaintiff has a

fair ability to maintain regular attendance in the workplace. (AR 294.) Dr. Nikkel found Plaintiff has fair to poor ability to accept instructions from supervisors and interact with coworkers and the public as evidenced by her irritable demeanor during the examination and fair to poor ability to complete a normal workday or workweek without interruptions from a psychiatric condition as evidenced by the intrusion of her symptoms during the evaluation. (AR 294.)

The ALJ found that Plaintiff had no functional limitations in the areas of activities of daily living and social functioning. (AR 16.) Plaintiff had mild limitations in the area of concentration, persistence, and pace, and has experienced no episodes of decompensation which have been of extended duration. (AR 16.) Because Plaintiff's mental impairments caused no more than mild limitation in any of the functional areas and did not result in episodes of decompensation of extended duration, Plaintiff's mental impairments were nonsevere. (AR 16.)

While it is unclear from the opening brief that Plaintiff is challenging the determination that Plaintiff's mental impairments are not severe, Defendant argues that the ALJ properly considered all the evidence in determining that Plaintiff's mental impairments were not severe.

In determining that Plaintiff's mental impairments were not severe, the ALJ considered that Plaintiff was self-employed and was able to work 20 hours per week performing skilled work. (AR 15.) Plaintiff was able to do paperwork and banking for her business, taking care of the bookkeeping and payroll. (AR 17.) Plaintiff has been maintaining the books for her husband's trucking business since 1996. (AR 176, 185.) She works four hours per day five days a week answering the phone and keeping the books, including tracking the jobs and payments, maintaining payroll records, and maintaining her husband's driving records on a weekly basis. (AR 36-37, 57, 176, 185-86, 194, 202.) This requires her to have technical knowledge and skills and she engages in writing or completing reports. (AR 177.)

The ALJ found that Plaintiff visits with others. (AR 17.) Plaintiff has friends. (AR 34.) She spends time talking with others on the phone every day and sometimes in person. (AR 48, 198, 206.) Several weeks prior to the hearing, Plaintiff called a friend and talked to her for two hours and fifteen minutes. (AR 48.)

1    Substantial evidence in the record supports the ALJ's opinion that Plaintiff's mental
2 impairments are not severe.

3    The Court construes Plaintiff's argument to be that the hypothetical presented to the ALJ
4 did not include all of Plaintiff's limitations. In determining the residual functional capacity of a
5 claimant, the ALJ must consider all the limitations and restrictions for the claimant. Valentine v.
6 Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

7    The weight to be given to medical opinions depends upon whether the opinion is
8 proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d
9 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater
10 weight than that of a nontreating physician because "he is employed to cure and has a greater
11 opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d
12 1035, 1040-41 (9th Cir. 1995) (citations omitted). "Likewise, greater weight is accorded to the
13 opinion of an examining physician than a non-examining physician." Id. at 1041.

14    If a treating or examining physician's opinion is contradicted by another doctor, it may be
15 rejected only for "specific and legitimate reasons" supported by substantial evidence in the
16 record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless
17 v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)); Lester, 81 F.3d at 830-31. The contrary
18 opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate
19 reason for rejecting a treating or examining physician's opinion, however, "it may constitute
20 substantial evidence when it is consistent with other independent evidence in the record."
21 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

22    Here, the ALJ gave little weight to the opinion of Dr. Nikkel because she concurred with
23 the opinion of the agency physicians that Plaintiff did not have a severe mental impairment. (AR
24 19.) However, the ALJ did not provide specific reasons to reject the limitations in Dr. Nikkel's
25 opinion.

26    While Defendant argues that Plaintiff's medical records showed few complaints of
27 anxiety and depression prior to July 2012, the ALJ did not proffer this as a reason to reject the
28 opinion of Dr. Nikkel. Although the Court may draw reasonable inferences from the ALJ's

opinion, Magallanes v. Bowen, 881 F.2d 747, 775 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

Accordingly, upon remand, in determining Plaintiff's residual functional capacity the ALJ shall also address the limitations in Dr. Nikkel's opinion.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred by failing to make specific findings regarding the transferability of skills and failing to offer specific and legitimate reasons to reject the opinion of Dr. Nikkel.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED. This action is remanded for further proceedings consistent with this opinion. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **September 4, 2015**

UNITED STATES MAGISTRATE JUDGE